Please be seated. The few of you that remain, we're happy to have you with us. We'll proceed to our fourth and final case, 24-1861, Figueroa v. Butterball. Mr. Hernandez, oh, Ms. Hernandez, my apologies. I should have picked up on that. We're happy to hear from you. Thank you. May it please the court, Gilda Hernandez on behalf of the plaintiff appellant, Osvaldo Figueroa. This court should reverse the improper dismissal of Figueroa's payday claim and the erroneous grant of summary judgment in favor of Butterball. As to whether Figueroa's payday claims are exempted by the plain language of section 95-25.14 presents a matter of first impression. Simply put, the answer is no. Now while the FLSA establishes the floor regarding an employer's statutory obligations, the savings clause allows the states to enact more generous protections provided that an employer comply with the more stringent of the two. Since the purpose of the North Carolina Wage and Hour Act is to promote the general welfare of North Carolinians and given the plain language of the summary of all earned and accrued promised wages, irrespective of the Fair Labor Standards Act. Similarly, while North Carolina looks to the FLSA as a guide, the state statutes control where there are intentional differences. Unlike the FLSA, the Wage and Hour Act's notice requirement mandates that employers advise their employees at the time of hiring of the time, place and manner of promised wages. But doesn't the offer letter that he signed do just that? Thank you so much, Honorable Judge Benjamin. The reality is that at the time of the pleading stage, this particular purported offer letter was not at issue. The district court was only solely looking at the allegations and the complaints and nothing more. So at that time, this purported offer letter was not really the issue before the court. But I believe now your client says that the offer letter was false or maybe, I don't know, but does he have a different offer letter? That's a very good question. So our client, Mr. Figueroa, unequivocally did not authenticate that offer letter. He disputed the offer letter, and at the time of his testimony, he repeatedly indicated that that offer letter was not the one that he had seen or that he had signed. So it was not a matter of recognition of the purported offer letter as the district court had suggested. And more significantly, what was so... I've got really bad evidence against me. Can I just say, I conclusory claim that that is false. I've got no real explanation. I've got nothing else. I can just say that letter is false. It must be made up. Is that sufficient to survive summary judgment, assuming that this was the sole issue? Probably not true, but assume that there was a single issue summary judgment. The question is, is there a dispute of fact? And there's documentary evidence on one side and testimony that supports it. And then there's an individual who just says, I have no explanation, but I just refused to authenticate, or I believe that document is false. Is that sufficient to avoid summary judgment? I think, Your Honor, the important thing is that the overarching issue relates to the Wage and Hour Act notice requirements, which mandate that communication, because where there are very specific ambiguities of conflicting information, that in and of itself should be a basis to deny the dismissal, the motion to dismiss by Butterball, relating to whether or not peace rate was at issue, because that's the whole poster problem. So your answer is no, but here it's different because of other information? Well, because we have more stringent payday requirements versus the FLSA. So he can just make up a conclusory denial, that ain't true, and that's sufficient, in your view? Well, again, it's a little bit more complicated in light of the fact, Your Honor, that there were also purported offer letters to other turkey loaders that did indicate hourly pay, and yet their pay stubs looked exactly like Figueroa's. So basically his suggestion, his refusal or dispute of the purported offer letter was exactly consistent. What's the record where the letters purported hourly payment? Absolutely, Your Honor. That's Joint Appendix 2841-2853. Those purported offer letters that demonstrate hourly pay were for Rainer, Evans, Cleveland, and Adams. And again, those individuals, despite those purported offer letters showing hourly pay, their pay stubs looked exactly like Figueroa's. So they may not have received notice, right? I understand maybe your argument, if they were there, they would not receive notice, but why does that help your client? Because it goes to the question of ambiguity, and because, again, the Wage and Hour Act is more stringent than federal, that the ambiguity issue is one that would have been caused to simply deny the motion to dismiss, allow the parties to proceed to discovery, to basically get more information as to what was the nature of this purported offer letter, and whether or not it was in fact presented to Figueroa. Because, again, he unequivocally stated that that was not the offer letter that he had seen. In fact, he was also... Where on the record would I find his unequivocal statement? That would be... I just want to make sure I'm looking at the best thing you want me to look at. Absolutely, Your Honor, and I appreciate the question. That would be Joint Appendix 1444-1445. Thank you. Absolutely. But what we have here is... Now, just to clarify, that was at his deposition, right? Correct. But you seem to be making a different argument right now about the motion to dismiss. You're suggesting you brought a North Carolina Wage and Hour Act claim about lack of notice because he didn't get an offer letter under North Carolina law. Is that what you're saying? I missed that in your previous arguments. Absolutely. Again, because the Wage and Hour Act has more stringent requirements in the FLSA, employers are mandated to advise their employees at the time of hiring of the time, place, and manner of those promised wages, and comply with those promised wages. Yeah, I thought in front of the district court, you had an argument for overtime and the district court said, North Carolina law exempts that because that's an FLSA issue. Then the court addressed the straight time argument about... He said it was promised by his pay stubs, an hourly rate, and the district court took that head on and looked at the pay stubs. That is correct. And then resolved that. Those are the two issues under the Wage and Hour Act. It's a little broader under the Wage and Hour Act because certainly section 95-25.14 exempts employers that are subject to the FLSA from the bare minimum statutory obligations found under the North Carolina Wage and Hour Act, which is minimum wage, overtime, and record the payday statute, which is 95-25.6, which allows a recovery of promised wages. It says all promised wages. It doesn't provide for any exceptions with respect to a certain type of promised wage. That's the issue we have here. We, Figueroa, sought a claim under the payday provision for promised hourly pay, promised straight time, promised premium of overtime. I think this is the first two complaints. I think he acknowledges that he was paid under this piece rate compensation. And then he comes back and says, no, I was supposed to be paid hourly. And so we have the first two complaints. I understand you said that he disputes the letter, but he doesn't have another offer letter. And then he has the actual pay stub that shows the piece rate compensation that he, I think, accepted for years. And so I'm just curious as to, I mean, I'm a little confused as to what argument he's trying to make here because he's made different arguments or allegations in his previous complaints. And as to this piece rate, and now he's saying, well, I'm subject to this because I'm supposed to have this hourly rate, although there's nothing that's really in the record that supports that other than what he says. And that's a fair question, Your Honor. I can tell you that quite the contrary. The piece rate consistent with the CFR 778.318. They do not show a number of loads that any employee... Is that like your argument sort of turns on that? So if hypothetically, except for a minute, that I think that's just wrong, hypothetically, does that resolve the case? Are we sort of done at that point? If the pay stubs show a piece rate system, then do you agree in that instance we're done? No, we are not done because... So what would be left in that hypothetical world? Figueroa was obviously not exclusively relying on the pay stubs, and that was one of the issues why the district court got this wrong. Because the district court essentially considered extrinsic evidence that was not offered exclusively to support the payday claim. It was not offered a reference in the complaints for the purpose of truthfulness as it relates to those pay stubs. It was only one mere example. And yet, going to Judge Benjamin's point about the initial complaints, the court treated those initial complaints, the original and the first amended complaint, as though they were conclusive evidence as opposed to rebuttable. The appropriate thing would have been to simply allow the information to come in as admissible, and then allowing Figueroa to provide additional evidence that would rebut the earlier testimony. And that's not what happened here. He simply took that and ran with it, and at every turn was looking to essentially deny or dismiss... But you agree... The North Carolina... Sorry. So you're really just arguing the North Carolina cases. You agree on the FLSA cases that the district court properly considered that inconsistency in determining that summary judgment was appropriate. Your argument, that you're making at least now, is just about the North Carolina Act. Yes. Certainly, because the Wage and Hour Act provides for different elements and more generous remedies, that the North Carolina Wage and Hour Act is more stringent. So the analysis should start there. Not to mention the fact that... Can I then ask, in the gap that we have here between the North Carolina Act's dismissal and the discovery that was done on the FLSA, were you limited in your discovery in some way? I couldn't find in the record where your discovery was limited such that there would have been information about the North Carolina Act that would have come out that you weren't able to get. Did the court limit you in some way that you think is material to the North Carolina Act claims for discovery purposes? Or was all the discovery effectively the same for both of these issues? Thank you, Your Honor. The information, what I would say was... Well, obviously, at the pleading stage, he dismissed the North Carolina claim. We did find additional supporting information to corroborate the payday claim, but it wasn't like we were able to do anything. Despite multiple motions for reconsideration, the court still refused to reconsider the dismissal of the North Carolina claims. But if we were to continue to... For example, if this court were to reverse and remand, we would move forward with class-wide discovery and then filing a motion for Will 23 certification and trying to learn how many other people... Can I just ask why we would do... Actually, your time's up. I'll let you come back up on rebuttal. How about that? Thank you very much, Your Honor. Mr. Anderson, we're happy to hear from you. Thank you, Your Honor. And may it please the court, my name is Scott Anderson on behalf of the Appley Butterball. This case is straightforward. The North Carolina Wage and Hour Act claim is exempted by North Carolina statute. That statute contains specific provisions that state that plaintiffs or rather employees should not bring overtime claims and should not bring minimum wage claims if their employment is covered by federal law. The introduction to all three pleadings that Mr. Figueroa filed in this case specify that this is an overtime and minimum wage case. This case falls within the exemption. As to the Fair Labor Standards Act, the trial court properly entered summary judgment because Mr. Figueroa admitted all of the key facts. As Judge Benjamin has already pointed out, he admitted in two pleadings that he was told that he would be paid under a piece rate system. In fact, in each of those pleadings, Mr. Figueroa specified the exact piece rate that he recalled being told. Mr. Figueroa also admitted during his deposition that he was in fact presented with an offer letter and that he did in fact sign the offer letter that he was presented. And he also admitted in his deposition that the signature that is on the offer letter found within Butterball's employment records for Mr. Figueroa looks like his signature. Finally, Mr. Figueroa admitted that Butterball keeps accurate time records. Mr. Figueroa admitted that punching into work was the first thing he did each day and punching out of work is the last thing he did each shift. He presented no reason to believe that any specific punch or Butterball's punch logs generally are under dispute. Because the court did not dismiss the FLSA claim on the pleadings, we proceeded with discovery and specifically discovery into Mr. Figueroa's third pleading that an individual by the name of Rocco, whose actual name is Russell Jones, told him he would be paid an hourly rate. Once we took that discovery, Butterball identified Mr. Figueroa's offer letter in Butterball's employment files. Russell Jones's deposition was taken. He testified that he told each loader catcher employee that they would be paid based strictly on a load rate. Rene Arthur, the agent... What do you do to the offer letters that your colleague suggested said some of them were given offer letters that were hourly? Simply put, none of those individuals have taken an appeal in this case. Those offer letters are distinguishable on several grounds including the fact that the closest in time offer letter is more than four years apart from when Mr. Figueroa's interview was. There are many more or equal number of offer letters contemporaneous with Mr. Figueroa's employment. A few before he was interviewed, a few after he was interviewed that have the same language we have here. You will be paid a piece rate. This role is subject to overtime. It is that simple and Mr. Figueroa signed that letter. We would also point the court to the fact that each of those offer letters contain rates, I believe, between $11 and about $13 per hour. Mr. Figueroa's claim is that in 2017, four to five years prior to those offer letters, he recalls something that stated $18 per hour. Now there's once again a little bit of contradiction in Mr. Figueroa's testimony. At one point, he said he was promised an hourly rate of $10 per hour. At another, he says he was promised an hourly rate of $18 per hour where Mr. Figueroa's own testimony about what he believes he was offered contains multiple inconsistencies. We don't believe he's created a triable issue of fact. What is the 18 number that's at the top of the pay stubs that says rate? That is Mr. Figueroa's rate for a holiday and vacation pay. He was, and I believe this is in his offer letter as well, eligible for holiday and vacation paid time off. Obviously, during those periods, he is not engaged in the loading or catching of turkeys and so Butterball needs to substitute a rate and ensure that he is paid for that time off. I also note that those rates are generally consistent where Mr. Figueroa was receiving a similar amount for those 40 hours of vacation time as he often received for his 40 hours of work when he had a fully active week. Your interrogatories, I think, gave a different response for what that $18 rate is. The one you gave today is the one that makes more sense and the one that the HR employee testified to. Is there, does that create a conflict that should bother us or? No, and I believe Your Honor is referring to the training meetings that occurred approximately once per quarter which were separate non-productive time and Mr. Figueroa and other individuals would receive pay at the separate hourly rate for that time when they were not engaged in the loading or catching of employees or engaged in activities that are directed, or sorry, loading and catching of turkeys or engaged in activities that are directed towards the loading and catching of The HR employee also testified that those are separate punches. If it was a three-hour training meeting, the employee would punch in at the beginning of that meeting, punch out at the end of that meeting, and that's handled differently within Butterball's system. You'll also see that handled differently. I thought the interrogatories in the district court relied on this, that they said that $18 rate is the reference, they referenced the CFR, 29 CFR 778.111A rate, which is averaging, you know, the loads over the week per the hours, and then figuring out what's your sort of like de facto weekly rate. So, that's pretty clearly not what that rate number is, right? With respect to the rate on the top of the pay stub, that is a fixed rate that for a period of time Mr. Figueroa would receive that rate for activities that were not directed towards the loading and catching. For overtime purposes, and I think this is what the interrogatories described in significant detail, Butterball went through the process of calculating the implied hourly rate or what the FLSA calls the regular rate of pay, which doesn't have to be an hourly rate, it can be a rate calculated based on what did the employee receive per hour once you back that out at the end of a week. And so, in Mr. Figueroa's case, that means, and there are spreadsheets in the joint appendix. That would like change from week to week, right? Depending on how many loads you do, how long you work. We wouldn't expect that to be the same on every paycheck. We would not expect that to be the same on every paycheck. Can you address the argument regarding the non-principal activities and principal activities? I mean, there is, I think there, now I have a question for opposing counsel regarding this, but this argument that he, I guess, cleaned the trucks and did all these different things prior to and that he, under the FLSA, that he should be paid for that time, I think under, I think the case is integrity staffing and then also that Mount Clemens case. So, Judge Benjamin, that is a great question. This is a difference between Mr. Figueroa's and the testimony of some of the other employees. Some employees testified that they engaged in work activities before punching in or after punching out. Butterball disputes that as to those employees and disputes that that was material time. Mr. Figueroa did not present any evidence along those lines. If he ever cleaned a van, that would have been after he had already punched in and was already receiving credit for being at work, receiving potential overtime calculations and the like for that work. But I think the district court, I don't think the district court considered that evidence. I think the district court just said that it's sporadic. I mean, that it did not really consider the pre-activities if they would apply as an integral part of or indispensable part of the work activity as, I guess, described in those two cases. So, I'm concerned as to is there an error there because the district court did not consider those. But it seems like you're saying that he didn't make those allegations and everybody else did. Mr. Figueroa did not make those allegations. We do not view those theories as being the subject of this appeal because none of the employees who actually did make allegations that they worked off the clock filed any appeal. And there's nothing in the issues presented on appeal that suggests that Mr. Figueroa himself engaged in off-the-clock time. If they were, I take your response to be that they're not integral part if they're just done on a sporadic basis, right? That is absolutely right, Judge Richardson. We believe that the trial court got it correct that these were de minimis activities or activities done on a sporadic basis. And they do not suggest that employees were underpaid or that there is any systemic problem with Butterball's timekeeping. Can you touch a little bit on why you think the other plaintiffs were required to appeal in order to present their claims to us and why their claims are now resolved because they failed to appeal? Of course, Your Honor. The case law regarding collective actions under the FLSA distinguishes between collective actions under the FLSA and class actions under Rule 23. Collective action mechanisms are essentially streamlined joinder processes. They are opportunities for individuals to affirmatively offer their interest to be participants in a case. They join as plaintiffs in the case. These each of the individuals who was a opt-in plaintiff below could have filed his own motion, could have filed his own appeal. They had the opportunity to file separate motions on any issue as a party litigant. And none of them filed an appeal in this case. And we note that the notice of appeal in this case, it is any language about Mr. Figueroa appealing on behalf of others is notably absent from the notice of appeal that Mr. Figueroa filed. I thought the caption said, the caption has, you know, Figueroa on behalf of all others similarly situated. Now the body of it doesn't have that. I could be wrong, Your Honor. I don't believe that is the way it was captioned in the Fourth Circuit. And I don't believe that that is notice of appeals not filed in the Fourth Circuit. With respect to the caption used in the trial court, yes, Mr. Figueroa did use the same caption after judgment as Mr. Figueroa was using before judgment, which included language about, and others similarly situated. However, we don't view a case where there are nine plaintiffs and all nine plaintiffs have their names listed in the caption. The filing by one of those plaintiffs, even if they're represented by the same counsel, would not necessarily be a filing by all of those plaintiffs. And so we believe the court should read the notice of appeal and indeed many of the documents filed with this court as indicating that there is one and only one appellant here and that is the named plaintiff, Mr. Figueroa. Well, the, you know, filings in this court and what have you, that could be a question of, you know, prejudice. Like, did you have notice you were defending claims of other plaintiffs? But the notice of appeal is actually a jurisdictional requirement. So that's why I'm focused on what does the notice of appeal require? And you're saying the caption is not sufficient? He needs to list all the other plaintiffs in the body of the notice? Correct, Your Honor. A notice of appeal would state, would identify who is taking an appeal and what orders they take an appeal from. And this notice specifies that there is only one person taking an appeal. I do want to address the policies and forms that my colleague brought up during opening argument. There are several forms that mention general hourly policies. Mr. Figueroa did not rely on any of those forms. None of the three complaints mentions any form involving Butterball on which Mr. Figueroa relied, except that the complaints, all three mentioned the pay stubs. We asked in interrogatories, what policies, what forms, what writings did Mr. Figueroa rely upon? He didn't identify any of those forms. And so we don't believe that there is any claim based on an ambiguity in forms that Mr. Figueroa did not read or rely upon. The same is true of a job posting that Mr. Figueroa has pointed to. He states there was a job posting that identified an $18 hourly rate, but the record has shown no such job posting. I mentioned at the outset that Butterball keeps accurate time records. This is an issue raised in the appeal, but we don't believe, or we believe Mr. Figueroa's admissions fully address both Butterball's time records and Butterball's pay calculations, which use the work week that Mr. Figueroa admits was the applicable work week and any confusion or discrepancy we have addressed by showing the specifics of Butterball's calculations. Thank you, counsel. Thank you, your honor. Mr. Hernandez, we're happy to hear from you. Thank you, your honors. There are several points that I would like to address in response to my colleagues' response, oral argument. First and foremost, we have documents here that were conflicting with the information to suggest that somehow piece rate is what applied here. Again, and I think this goes to Judge Rushing's questions about the hourly rate. Even though Butterball's corporate HR individual admitted that the pay stub did contain an hourly rate, and they then later said that it was consistent with 778.111, as Judge Rushing pointed out, that really goes to the question of taking up all of the earnings for piece rate pay, dividing it by the hours worked to come up with the appropriate regular rate. That rate should change or fluctuate every single work week, depending on how many pieces or loads are being gathered. Yet, that was the basis for the district courts. One of the reasons why the district court granted summary judgment, finding that that rate at the very top of the pay stub, even though it never changed except for an increase in hourly rate, was suggesting that it was a regular rate consistent with CFR 778.111. That's one point. The other point is that going back to section 95-25.14, the plain language there does not exempt any claims brought under the payday provision pursuant to section 95-25.6. There is also nothing in that section of the payday provision that limits what sort of claims can be brought or what sort of different amounts can be proceeded with. The other issue relates to Anderson versus Mount Clemens. In response to a question by Judge Benjamin about the disconnect in terms of the hours, one of the issues that was also an erroneous finding of summary judgment, because there were genuine issues and material facts, go back to the question of the moving of hours from one week to the next. We had admissible information here from Butterball's people admitting and finding it troubling that they were moving hours from one week to the next. That's contrary to the Supreme Court's ruling in Anderson versus Mount Clemens, because then there it establishes inaccurate pay records. When that happens, the burden then shifts to the employees, and the employees should be able, by reasonable inference, demonstrate the extent and the amount of unpaid hours worked. Yet, the district court found that they had a logical explanation for the moving of Sunday hours worked. It just doesn't make any sense. Also, the district court took the years, the summary of hours worked for 2017, for 2018, and said, well, all of these hours look pretty much the same to me, so I don't see any issue here. That was another erroneous finding. Again, just resolving the genuine issues and material facts in favor of Butterball. That's another issue that we found. On the issue of the pre-shift, your pre-shift, does Mr. Figueroa make allegations that, I know the opt-in plaintiffs made these allegations, but where does he make the allegations that he engaged in these pre-shift activities? His allegations, Judge Benjamin, were that he was working hours, and that he wasn't paid for all of his hours worked. He disputed the pay stubs, which reflected a lot less than what he had been representing in his complaints, that he was working between 80 and 90 hours a week. In contrast to what my colleague was suggesting, that those pre-shift and post-shift activities, which could actually encompass the number of hours that people are working, was saying, well, those are just de minimis. This court has very specifically found in Perez v. Mount Air Farms that pre-shift and post-shift activities, when they are integral and indispensable to the principal activities, are compensable time. This court has actually rejected- Maybe just to answer Judge Benjamin's question. You don't have to, I guess. You can not. Where is it that your client alleged that he had those types of pre-shift hours? What JA site do you want me to look at? Because when I read his statements, I didn't get it, but I want to be sure I look at the right place. Where is it that I would look to find your client's evidence, in summary judgment, that he did so? Well, there are allegations in the complaints that he was working hours that he was not paid for. But that's not sufficient to survive summary judgment, right? Believe it or not, in this particular case, we have reason to doubt some of the allegations in the complaint, because they're totally inconsistent with one another. But an allegation in the complaint isn't enough to survive summary judgment. The question is, is there anywhere? And the answer can be just, no, I don't have anything. But is there anywhere that you want me to look to find where your client alleged the type of pre-shift hours that you've just pointed us to in citing our prioritization? Certainly. And again, while there's not necessarily specific details that he was working pre-shift and post-shift, his allegations were that he was working hours that he was not paid for. I will say, however, Judge Richardson, that the opt-in plaintiffs, contrary to my colleagues suggesting that they have no stake or no dog in this fight, that is absolutely incorrect, because the name plaintiff was representing not just himself, but those similarly situated. And this was a representative action. The consent forms demonstrate that they are- So your view there is that they didn't have to appeal. That's correct. Not that they did appeal, but that they didn't have to, because he was affected. We should treat this like a class action, in other words. It's a collective action, and certainly the district court did not grant the motion to decertify. So it still remains, to the extent that this court should reverse and remand, would stay as a collective action. That is correct. And so going back to your answer about where the information is, certainly the opt-in plaintiffs did provide information that they had worked pre-shift and post-shift activities. Thank you very much, your honors. I appreciate your attention to this matter. Thank you, counsel. We'll come down and greet. And Madam Clerk, if you'll adjourn court for the day. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Julius N. Richardson, Allison J. Rushing, DeAndrea Gist Benjamin